1  LINDA B. OLIVER (SBN 166720)
   loliver@maynardcooper.com
2  MAYNARD, COOPER & GALE, LLP
   600 Montgomery Street, Suite 2600
3  San Francisco, CA 94111
   Telephone: (415) 646-4700
   Facsimile:  (205) 254-1999
4  Attorney for Defendant
   HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY

5

6              **UNITED STATES DISTRICT COURT**
               **CENTRAL DISTRICT OF CALIFORNIA**

7
   DAVID EIGNER,
8                        Plaintiff,        Case No.: 2:17-CV-00211-VAP-JEM
   vs.                                     **DEFENDANT'S OPPOSITION**
9                                          **TO PLAINTIFF'S MOTION**
   HARTFORD LIFE AND ACCIDENT              **FOR SUMMARY JUDGMENT**
   INSURANCE COMPANY,
10                                         Date:  October 23, 2017
                         Defendant.        Time:  2:00 p.m.
11                                         Courtroom: 8A
                                           Hon. Virginia Phillips
12

13

14

15

16

17

18

19

20

21

1

# TABLE OF CONTENTS

TABLE OF CONTENTS ..........................................................................................i

TABLE OF AUTHORITIES ................................................................................ii

   I.    INTRODUCTION .......................................................................... 1

   II.   RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS ............................2

   III. POINTS AND AUTHORITIES ..............................................................2

  A.  Plaintiff Has the Burden of Showing Entitlement to Ongoing LTD
      Benefits, Which He Cannot Meet after an Independent and Thorough
      Review of the Record. ..........................................................................2

  B.  Plaintiff Cannot Meet His Burden Solely by Relying on His Doctors'
      Overstated Restrictions. ......................................................................3

     1.    Plaintiff's Doctors' Opinions are Disproportionate to the Evidence in the
         Record. ..............................................................................3

     2.    The Evidence Shows That Plaintiff's Actual Functionality Exceeded the
         Disproportionate Restrictions Given by Some of His Doctors. ..............8

     3.    The Social Security Award Does Not Bind Hartford's Determination....11

   IV. CONCLUSION ..............................................................................13

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT**

# TABLE OF AUTHORITIES

## **CASES**

*Armani v. Northwestern Mut. Life Ins. Co.,*
      840 F.3d 1159 (9th Cir. 2016)..........................................................................1

*Biggar v. Prudential Ins. Co. of Am.,*
      ___ F. Supp.3d ___, 2017 WL 3453341 (N.D. Cal. Aug. 11, 2017)............11

*Black & Decker v. Nord,*
      538 U.S. 822 (2003) ...........................................................................................8

*Cruz-Baca v. Edison Int'l Long Term Disability Plan, ___ F. App'x.___,*
      2017 WL 3888005 (9th Cir. Sept. 6, 2017) ....................................................1

*Hamma v. Intel Corp.,*
      642 F. Supp. 2d 1144 (E.D. Cal. 2009)...........................................................8

*Jordan v. Northrop Grumman Corp. Welfare Benefit Plan,*
      370 F.3d 869 (9th Cir. 2004)........................................................................3, 4

*Matthews v. Shalala,*
      10 F.3d 678 (9th Cir. 1993).............................................................................4

*Muniz v. Amec Constr. Mgmt., Inc.,*
      623 F.3d 1290 (9th Cir. 2010).........................................................................3

*Rorabaugh v. Cont'l Cas. Co.,*
      321 Fed. Appx. 708 (9th Cir. 2009)................................................................8

*Safavi v. SBC Disability Income Plan,*
      493 F. Supp. 2d 1107 (C.D. Cal. June 26, 2007) .........................................10

*Seleine v. Fluor Corp. Long-Term Disability Plan,*
      598 F. Supp. 2d 1090 (C.D. Cal. 2009) ......................................................4, 8

*Shaw v. Life Ins. Co. of N. Am.,*
      144 F. Supp. 3d 1114 (C.D. Cal. 2015) ...............................................2, 7, 11

*Silver v. Exec. Car Leasing Long-Term Disability Plan,*
      466 F.3d 727 (9th Cir. 2006)...........................................................................2

## **RULES**

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

1

Fed. R. Civ. P. 56...................................................................................................... 1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant Hartford Life and Accident Insurance Company ("Hartford") hereby submits its Opposition to Plaintiff David Eigner's ("Plaintiff") Motion for Summary Judgment as follows:

## I. **INTRODUCTION**

In his Motion for Summary Judgment under Fed. R. Civ. P. 56, Plaintiff dramatically oversimplifies the complete medical record in this case. While recent case law suggests that a person that cannot sit for more than 4 hours in an 8 hour workday is unable to perform a sedentary job, Plaintiff is trying to fit square peg medical opinions into the case law's round hole. *Contrast Armani v. Northwestern Mut. Life Ins. Co.*, 840 F.3d 1159 (9th Cir. 2016); *Cruz-Baca v. Edison Int'l Long Term Disability Plan*, ___ F. App'x.___, 2017 WL 3888005, at *1 (9th Cir. Sept. 6, 2017). In an effort to fit within the case law, Plaintiff isolates one or two provider opinions that are overstated, not supported by the Record including Plaintiff's observed activity level, or undermined by the opinions of physicians specializing in Plaintiff's very conditions.

In addition, the Social Security Administration's determination under its own separate standards is distinguishable for several reasons including that it examined Plaintiff's condition several years prior to Hartford's determination, was based on different evidence than that before Hartford, and expressly anticipated additional reviews based upon the expectation that Plaintiff's condition would improve. The

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

1   relevant period to consider when determining whether Plaintiff continued to qualify

2   for benefits under the LTD plan is 2015 and 2016.  Plaintiff's motion for judgment

3   should be denied.

4   **II.      RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS**

5          In response to Plaintiff's "Facts of the Claim" Section and pursuant to this

6   Court's Standing Order, [Doc. 9], Hartford incorporates its "Statement of

7   Unconverted Facts" submitted in support of its own contemporaneously filed Motion

8   for Summary Judgment and responds to Plaintiff's facts in the required table format,

9   attached hereto as Exhibit "A."

10  **III.     POINTS AND AUTHORITIES**

11        **A.     Plaintiff Has the Burden of Showing Entitlement to Ongoing LTD
              Benefits, Which He Cannot Meet after an Independent and
12             Thorough Review of the Record.**

13         Hartford agrees that the parties have stipulated that the Court should apply a *de*

14  *novo* standard of review.  When the standard of review is *de novo*, "district courts

15  have a responsibility under the ERISA framework to undertake an **independent** and

16  **thorough** inspection of an administrator's decision."  *Silver v. Exec. Car Leasing*

17  *Long-Term Disability Plan*, 466 F.3d 727, 733 (9th Cir. 2006) (emphasis added); *see*

18  *also Shaw v. Life Ins. Co. of N. Am.*, 144 F. Supp. 3d 1114, 1122-23 (C.D. Cal.

19  2015)("When conducting *de novo* review of a decision by an ERISA plan

20  administrator, the Court has a responsibility to undertake an independent and

21

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT**

1 thorough inspection of the decision").

2    As Hartford set out in its Opening Brief, notwithstanding that the Court will

3 review Hartford's determinations *de novo*, Plaintiff has the burden of proving

4 entitlement to benefits by a preponderance of the evidence. *Muniz v. Amec Constr.*

5 *Mgmt., Inc.*, 623 F.3d 1290, 1295-96 (9th Cir. 2010); *see Jordan v. Northrop*

6 *Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 880 (9th Cir. 2004), overruled

7 on other grounds by *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d at 955, 969 (9th

8 Cir. 2006) ("That a person has a true medical diagnosis does not by itself establish

9 disability. Medical treatises list medical conditions from amblyopia to zoolognia that

10 do not necessarily prevent people from working.").

11    An independent and thorough inspection of the Record – including Plaintiff's

12 own activities reflected on surveillance and the opinions of doctors specializing in his

13 medical conditions - will demonstrate that Plaintiff's sedentary functionality is not as

14 Plaintiff depicts; therefore, Hartford correctly determined that Plaintiff was not

15 entitled to further LTD benefits under the Plan.

16    **B.    Plaintiff Cannot Meet His Burden Solely by Relying on His Doctors'
            Overstated Restrictions.**

17
      **1.    Plaintiff's Doctors' Opinions are Disproportionate to the
            Evidence in the Record.**
18

19    Plaintiff's complaints of back, shoulder and neck pain, and cervical spine

20 diagnoses do not establish that he is disabled under the terms and conditions of the

21
                                            3

1    Plan.  Instead, Plaintiff must affirmatively prove that his medical condition renders

2    him so functionally incapacitated that he cannot perform <u>any</u> <u>occupation</u> that he is or

3    could become qualified for by education, training or experience. (AR 2266). The

4    Ninth Circuit has made clear that a diagnosis does not establish disability.  *See, e.g.,*

5    *Jordan, supra*, 370 F.3d at 880 ("That a person has a true medical diagnosis does not

6    by itself establish disability . . . . Sometimes [people's] medical conditions are so

7    severe that they cannot work; sometimes people are able to work despite their

8    condition; and sometimes people work to distract themselves from their

9    conditions."); *see also Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993)("The

10   mere existence of an impairment is insufficient proof of a disability."); *Seleine v.*

11   *Fluor Corp. Long-Term Disability Plan*, 598 F. Supp. 2d 1090, 1100 (C.D. Cal.

12   2009).

13          Plaintiff also argues that independent medical examiners retained by Hartford

14   determined Plaintiff to be disabled.  This is simply not accurate.  While Hartford's

15   2013 IME physician did provide restrictive sitting limitations based on Plaintiff's

16   condition as of February 2013 (during the time Plaintiff's benefits were awarded and

17   being paid), this opinion has no bearing on Plaintiff's ability to sit in 2016,

18   particularly after he was observed sitting for the majority of a fourteen hour day.

19   (AR 1328; 1449-52).  More importantly, however, Plaintiff takes the opinion of

20   Hartford's second IME doctor completely out of context.  Contrary to Plaintiff's

21

4

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT**

1  representations, the board certified occupational medicine specialist (Dr.

2  Mummaneni) did not suggest that Plaintiff could only sit a total of "4 hours and one

3  minute" per day.  The patent falsity of this characterization is evident from the entire

4  quote of Dr. Mummaneni's report:

5  > Question: Are there any objective medically necessary restrictions or
>  limitations to sitting for the majority of an average 8 hour day, up to
6  > 40 hours a week, if allow the flexibility to briefly stand, stretch or
>  walk as needed for comfort during the day?
7  > Answer: The claimant should be able to sit for the majority of an
>  average 8 hour day, **up to 40 hours a week**, as long as he may change
8  > positions as needed, including standing, stretching or walking on an as
>  needed basis.  This may vary from needing to change positions every
9  > 5 minutes to every 30 minutes.  **He can do this 8 hours a day, up to
>  40 hours a week.**

10  (AR 1213) (emphasis added).  Dr. Mummaneni's second response that Plaintiff "can

11  stand for 30 minutes at a time, and alternate with sitting **during an 8 hour day**" and

12  "can walk for 30 minutes at a time and alternate with sitting **during an 8 hour work**

13  **day**" further undermines Plaintiff's characterization of Dr. Mummaneni's opinion

14  that Plaintiff has the functional physical capacity to work a full-time sedentary

15  occupation.  *Id.*  Dr. Mummaneni's opinion is also buttressed by opinions from board

16  certified cardiologist and physical medicine and rehabilitation specialists further

17  highlighting the lack of objective medical evidence supporting such restrictive sitting

18  limitations.  (AR 197, 208-09).

19     Indeed, not all of Plaintiff's own treating doctors provided restrictions and

20

21

5

1   limitations during the relevant time period that support his claim for ongoing LTD

2   benefits.   Although Plaintiff apparently saw an orthopedist for hand pain in

3   September 2016, that specialist did not provide restrictions.  In fact, even though the

4   scope of the specialist's purported treatment was oddly limited to examining

5   Plaintiff's hands, even that clinical testing revealed "no acute or chronic

6   abnormalities" and the physical exam was normal.  (AR 219).[1]

7   　　Plaintiff's cardiologist who treated Plaintiff for periodic irregular heart

8   rhythms affirmatively indicated that Plaintiff was not restricted from a cardiac

9   perspective both in 2015 and in 2016. (AR 193, 2085-86); *see also* (AR 475-92)

10   (cardiology records from March and April, 2016 noting that Plaintiff is

11   "asymptomatic" with "no signs or symptoms of congestive heart failure").

12   Specifically, Plaintiff's cardiologist never provided sitting restrictions. Although he

13   signed a letter for Plaintiff's counsel indicating that stress could negatively impact

14   Plaintiff, a month later, however, he reiterated his prior opinion that "there has never

15   been a cardiac source of impairment." (AR 193).

16   　　That leaves Plaintiff's treating chiropractor (Splies) and internist (Deutsch) as

17   the remaining advocates for Plaintiff.   Their opinions that Plaintiff is virtually

18   incapacitated such that he can only engage in any combined physical activity for four

19

20   [1] The chiropractor recommended orthopedic treatment (AR 1275, 1281, 1363), but it appears the limited treatment Plaintiff sought was sparse and not related to the spinal complaints at the heart of his LTD claim.  (AR 217-220).

21

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

1   hours a day do not withstand any level of scrutiny when compared to the totality of

2   the evidence from the key time period in this Record.   As argued in Hartford's

3   Opening Brief, *see* III. B. 1., under *Shaw*, 144 F. Supp. 3d at 1129, the solid and

4   measured opinions of doctors specializing in the very conditions for which Plaintiff

5   seeks disability are more credible, particularly where those opinions incorporate

6   reasonable restrictions and limitations for his condition and still allow Plaintiff to

7   return to "any occupation."   Indeed, a close examination of the chiropractor and

8   internist's records from the relevant time period show that their office visits reflect

9   "stable" condition and "fluctuating" pain levels – except for periodic "flare-up"

10   episodes of increased pain brought on by specific and isolated events – such as

11   Plaintiff's beach altercation and injury during handcuffing, an increase in workouts,

12   and a slip and fall incident in a retail store.   (AR 1259, 1261, 1266, 1369).   These

13   one-time "bumps in the road" do not add up to total disability under the Plan, and do

14   not justify the disproportionate restrictions and limitations provided by these

15   providers.

16       Finally, ERISA does not require plan administrators to accord special

17   deference to opinions of treating physicians, meaning that, here, Hartford need not

18   have deferred to the chiropractor and internist's opinion of disability.   *See Black &*

19   *Decker v. Nord*, 538 U.S. 822, 828-29 (2003) ("The 'treating physician rule,' which

20   applies in Social Security cases and requires the administrator to give deference to the

21

7

opinion of the claimant's treating physician, does not apply to administrators in ERISA cases.); *Rorabaugh v. Cont'l Cas. Co.*, 321 Fed. Appx. 708, 709 (9th Cir. 2009) (On a *de novo* review of participant's claim for long term disability plan benefits under ERISA, plan administrators were not obliged to accord special deference to the opinions of treating physicians.); *Hamma v. Intel Corp.*, 642 F. Supp. 2d 1144, 1152 (E.D. Cal. 2009) (same).   In fact, "[t]reating physicians are more or less required to accept their patients' representations," yet neither an ERISA claim administrator nor the reviewing court is obligated to do so." *Seleine, supra*, 598 F. Supp. 2d at 1102.

### 2.    The Evidence Shows That Plaintiff's Actual Functionality Exceeded the Disproportionate Restrictions Given by Some of His Doctors.

The objective medical evidence Plaintiff relies on are examinations of his chiropractor and internist, who either adopt Plaintiff's <u>self-reports</u> of pain or describe tenderness and limited range of motion upon movement, which Dr. Mummaneni also records during his examination.   The clinical tests are mostly dated from 2010 and 2014.   Tellingly, a neurologist (who was not retained by Hartford) examined Plaintiff for the first time on August 29, 2016 and noted that, while Plaintiff has complains of chronic neck pain, "there is no finding on the present MRI scan to account for it." (AR 169). Electrodiagnostic studies from June 2016 did not support the presence of an ongoing cervical radiculopathy.  (AR 201).  Finally, while the chiropractor clings

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

1    to November 2010 x-rays (taken six years before Hartford terminated benefits) to

2    support his incapacitating restrictions and potential orthopedic diagnosis of diffuse

3    idiopathic skeletal hypertosis ("DISH"), Dr. Krouskop reviewed <u>all</u> of the clinical

4    tests submitted through October 10, 2016 and noted that "more recent lumbar spine

5    and thoracic spine x-rays … do not report findings consistent with" DISH.  (AR 77).

6          In addition to the sparse clinical tests to substantiate Plaintiff's total incapacity,

7    other evidence collected by Hartford supports its decision that Plaintiff no longer met

8    the Policy's definition of disability.  Hartford conducted surveillance of Plaintiff,

9    including on July 12, 2015.  (AR 1328).   The surveillance in this case documented

10   Plaintiff sitting, bending at the waist, driving, walking, standing, and using his upper

11   extremities over a 14-hour period.  *Id.*  Plaintiff did not dispute this activity level

12   during his in-person interview, and even acknowledged additional activities,

13   including long distance travel.  (AR 1309; *see also* AR 1358, noting increases in

14   workouts; AR 1201, admitting golfing once or twice a month; AR 1294, 1392

15   admitting fighting with a lifeguard).  On appeal, Plaintiff attempted to rebut these

16   previously admitted or observed activity levels, but it was mostly limited to

17   indicating that he took his prescribed medication during the day of the Surf Rodeo,

18   plus drank alcohol, and still spent most of the day driving and sitting in a golf cart.

19   (AR 359, 362-63, 365-78).

20         The facts of this case fall more in line with *Safavi v. SBC Disability Income*

21

9

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

1  *Plan*, 493 F. Supp. 2d 1107, 1121 (C.D. Cal. June 26, 2007), than the cases relied

2  upon by Plaintiff. There, the claims administrator similarly had consulting physicians

3  review the objective and subjective medical evidence in the file, and review

4  surveillance video:

> Moreover, the consulting physicians considered the findings of
> Plaintiff's treating physicians, and based their findings that Plaintiff
> was not totally disabled in part on the findings of those physicians.
> Indeed, it is important to note that the consulting physicians did not
> conclude that Plaintiff was not suffering from endometriosis,
> fibromyalgia, or psychological issues.  Rather, they conclude that
> given the evidence of her physical, cognitive and psychological
> abilities as described by Plaintiff's treating physicians and Plaintiff
> herself, and as observed in the surveillance video, Plaintiff's condition
> did not rise to such severity that it would render her totally disabled.

11  Id.   As here, the physicians in *Safavi* also acknowledged the claimant's verified

12  medical conditions, yet the totality of the evidence showed that the claimant could

13  not meet her burden of showing she was disabled under the terms of the plan.  *Id.* at

14  1121-22.

15      The conclusion that Plaintiff is not disabled does not mean that Hartford

16  wholly discounted Plaintiff's self-reports.  Indeed, it is undisputed that all of the

17  reviewing doctors agreed on some level of reasonable limitations and restrictions for

18  Plaintiff (as to no overhead work, limited reaching and ability to change positions as

19  needed).  Where, as here, however, Plaintiff's self-reports are not verified by any

20  specialized treatment or medical evidence taken as a whole, and are contradicted by

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT**

Plaintiff's observed and acknowledged activity level, as well as the review of independent physician consultants, it is clear that Plaintiff is not disabled.

The inflated restrictions and limitations of a chiropractor and internist as well as Plaintiff's self-reported claims of an inability to perform any occupation fall far short of meeting his burden to provide objective evidence of disability consistent with the Plan's definition of disability, and particularly in light of the evidence in the Administrative Record to the contrary.   In sum, the totality of the medical and vocational evidence in the Administrative Record confirms that the Court should affirm Hartford's determination.

### 3.     The Social Security Award Does Not Bind Hartford's Determination

In this Circuit, a decision by the Social Security Administration ("SSA") is not binding on an insurance company's disability determination.   *See Biggar v. Prudential Ins. Co. of Am.*, ___ F.3d ___, 2017 WL 3453341, at *35 (N.D. Cal. Aug. 11, 2017); *see also Shaw*, 144 F. Supp. 3d at 1134 ("Thus, the fact that a claimant has qualified for government disability benefits is properly taken into consideration as evidence of disability, but is not determinative.").   While not binding, its relevance to Hartford's claim determination in February 29, 2016 has even less bearing for several reasons.

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

1    First, the SSA's determination was that Plaintiff was disabled under its

2   standards as of September 20, 2010, based on an application from June 2011 and a

3   hearing on April 16, 2013.  (AR 435, 440).  Hartford awarded Plaintiff benefits

4   during this same timeframe.  It was not until 2015 that Hartford began reviewing

5   Plaintiff's claim again, and Hartford did not terminate Plaintiff's benefits until

6   February 2016, six years after his disability date and nearly three years after his SSA

7   hearing.  Second, the Administrative Law Judge's ("ALJ") judgment was constrained

8   by the governing standards and federal criteria of the SSA which require, among

9   other things, deference to treating physicians.  Third, even though the ALJ deferred to

10   Plaintiff's treating physicians and was reviewing the evidence she had before her

11   from 2010-2013, the ALJ still acknowledged that "[m]edical improvement is

12   expected with appropriate treatment.  Consequently, a continuing disability review is

13   recommended in thirty-six months."  (AR 440).  Finally, as Hartford's own denial

14   letter acknowledged, Hartford had before it significantly different information than

15   the ALJ did when she made her decision, including Dr. Mummaneni's IME report,

16   the two specialists' peer review reports, the surveillance, a labor market survey and

17   two employability analyses:

18           [W]hile Hartford considers the SSA's disability determination as one
             piece of relevant evidence, the SSA's determination is not conclusive.
19           Mr. Eigner's LTD Policy is a contract that must be consistently
             enforced according to its terms.  Further, it should be noted that our
20           decision included a vocational analysis of transferable skills and was

21

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT**

1    based on more recent medical information than that used by the SSA
     at the time of their initial decision.

2

3    (AR 1890).  Given these differences, Plaintiff's 2013 SSDI Award cannot satisfy his

4    burden of showing entitlement to ongoing Plan benefits in 2016.

5    **IV.    <u>CONCLUSION</u>**

6            Hartford thoroughly and objectively reviewed the Administrative Record and

7    made a determination that is manifestly correct.  Plaintiff's position that his purported

8    disabling pain and cervical condition render him completely unable to perform any

9    occupation is not substantiated by medical examinations or medical testing, and is

10   plainly contradicted by his own activity level.  Because Plaintiff cannot meet his

11   burden and because Hartford correctly determined Plaintiff did not qualify for

12   ongoing LTD benefits, this Court should deny Plaintiff's motion for judgment and

13   enter judgment in Hartford's favor.

14

15   DATED: September 15, 2017               MAYNARD, COOPER & GALE LLP

16
                                            */s/* Linda B. Oliver
17                                          Linda B. Oliver
                                            *Attorney for Defendant*
18                                          *Hartford Life and Accident*
                                            *Insurance Company*
19

20

21

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT**

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA,           )

3

COUNTY OF SAN FRANCISCO    )

4

      I am employed in the County of San Francisco, State of California. I am over

the age of 18 and not a party to the within action. My business address is 600

5

Montgomery Street, Suite 2600, San Francisco, California 94111.

6

      On the date indicated below, I served the foregoing document described as:

7

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S STATEMENT OF FACTS**

8

9

✓ By CM/ECF ELECTRONIC SERVICE: The following recipients are
    registered as CM/ECF Users with the Court, and have consented to service
    through the Court's automatic transmission of a notice of electronic filing:

10

11

    Charles J. Fleishman

    The Fleishman Law Firm

12

    21243 Ventura Blvd., Ste. 141

    Woodland Hills, CA 91364

13

14

      I declare that I am employed in the office of a member of the bar of this Court

at whose direction the service was made. I declare under penalty of perjury under the

15

laws of the United States of America that the foregoing is true and correct.

16

      Executed September 15, 2017, at San Francisco, California.

17

18

_____

19

           Rachel Ouk

20

21

14

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT**