**THE FLEISHMAN LAW FIRM**
Charles J. Fleishman Bar# 46405
Paul A. Fleishman Bar# 251657
21243 Ventura Blvd., Suite 141
Woodland Hills, CA 91364
telephone (818)805-3161
fax (818)805-3163
erisa@erisarights. com
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

DAVID EIGNER,

            Plaintiff,

      v.

HARTFORD LIFE AND
ACCIDENT INSURANCE
COMPANY, a corporation; DOES 1-
10,

            Defendants.

Case No. 17 CV 211 VAP (JEMx)

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Date: October 23, 2017
Time: 2 p.m.
Courtroom: 8A
Judge: Hon. Virginia Phillips

## I.  A PERSON THAT CANNOT SIT FOR MORE THAN 4 HOURS IN AN 8 HOUR WORKDAY CANNOT PERFORM A SEDENTARY JOB.

In Armani v. Northwestern Mutual 840 F.3d 1159, 1163 (9th Cir. 2016) the court held, "an employee that cannot sit for more than four hours in an eight-hour workday cannot perform 'sedentary' work that requires 'sitting most of the time.'" Sedentary work, by definition, requires sitting most of the time.  See Also Cruz-Baca v. Edison 2017 U.S.App. LEXIS *3 (9th Cir. 2017).  Sedentary work requires

1

the ability to sit for 6 hours in an 8 hour workday.  Carter v. Barnhart 58 Fed.Appx. 304, 306 (9th Cir. 2003); Vertigan v. Halter 260 F.3d 1044, 1049 (9th Cir. 2001). Connors v. Conn. Gen. 272 F.3d 127, 136 n.5 (2d Cir. 2001)[recognizing sedentary work generally involves 6 hours of sitting]; Wykstra v. LINA 846 F.Supp.2d 285, 295 (N.D. NY 2012); Gordon v. Northwest Airlines 606 F.Supp.2d 1017, 1037 (Minn. 2009); LaVertu v. UNUM 2014 WL 1224736 at *13 (C.D. Cal 2014); Mondolo v. UNUM 2013 WL 1797 at *8 (C.D. Cal 2013); Juszynshi v. LINA 2008 WL 877977 at *7 (N.D. Ill. 2008).

The defendant did two vocational reviews.  The first, February 24, 2016, found jobs for the plaintiff.  Each of the found jobs

> "could be performed with the need to alternate positions between sitting, standing, and walking as needed for comfort as they are positions which are performed primarily seated but include brief periods of standing and walking, which can be timed at the worker's own volition." 1139.  Emphasis added.

The second vocational evaluation also found sedentary jobs whose work is done "mostly sitting."  35, 39, 45, 52, 58, 65.  Thus, if the plaintiff is limited in his ability to sit to less than six hours, and even more surely for four hours, in an eight-hour workday, he is totally disabled under the Hartford's policy.

## II.  THE PREPONDERANCE OF THE MEDICAL EVIDENCE LIMITS PLAINTIFF'S SITTING ABILITY TO 4 HOURS IN AN 8 HOUR WORKDAY.

On Feb. 19, 2013, plaintiff was examined by Dr. Karl Epstein at the request of The Hartford.  739.  Dr. Epstein concluded that plaintiff could work a maximum of 4 hours a day with breaks; that his sitting, standing and walking should be limited to less than 4 hours a day with breaks every 30 minutes; that the maximum he could push, pull and lift was 3 to 5 pounds; and he could rarely reach above shoulder, at waist, below waist; rarely stoop, kneel, crawl, climb, and use hands bilaterally.  1444.

When asked to examine Mr. Eigner in January 2013, Dr. Epstein was asked to "Please clarify the claimant's functionality as follows: Sitting, standing, walking hours at a time and hours per day."  1460.  Dr. Epstein's original report failed to address the issues.  2134, 2135.  Those issues were very important to The Hartford. We know this because Hartford asked Epstein to write an addendum dealing with the issues. 1443.  It is in the addendum that he wrote, "Sitting, standing, walking, less than 4 hours per day."  1444.

In July 2015 The Hartford had the plaintiff filmed at a surfing fair.  The people doing the filming were specifically told that "The individual has medical limitations of sitting, standing, walking less than four hour/day, with a break every 30 minutes." 1328.  The Hartford knew sitting limitations were important.[1]

In April 2012, Dr. Deutsch, Plaintiff's principal treating physician, limited sitting to 4 hours.  725.  A year later Dr. Epstein, hired by Hartford, limited sitting to 4 hours.  Hartford made an extra effort to get Epstein's opinion on the subject. In July 2015, Hartford reiterated its interest in Eigner's sitting limitations when it hired a company to film him.  None of the doctors that Hartford hired after Epstein disagreed with the 4 hour sitting limitation.  At best for Hartford, none of its doctors, neither Dr. Mummaneni nor Dr. Krouskop, voiced an opinion on the sitting issue leaving the opinions of Drs. Splies (7/16 AR 553), Deutsch (latest opinion 5/16/17 AR 1757), and Epstein limiting Eigner's sitting ability to 4 hours or less uncontradicted.

Not only did Drs. Mummaneni and Krauskop voice no opinion contradicting the opinions limiting Eigner's sitting ability, they seem to have accepted them.  Dr.

---

[1] The opinions of the filmer seem to weigh heavy in defendant's motion.  In fact, no weight should be given to such opinions at all.  First there is no evidence of any medical expertise on the part of the filmer.  Second, his observations are contradicted by defendant's own medical experts.  For example the filmer wrote, "The individual appeared to move in a normal manner." 1333.  Defendant's Dr. Mummaneni reviewed the surveillance video and he saw Mr. Eigner with limited neck movement and walking with an antalgic gait.  He limped. 1212.

Mummaneni wrote, "The claimant should be able to sit for the majority of an average 8 hour day, up to 40 hours a week, as long as he may change positions as needed. . . . The claimant can stand for 30 minutes at a time, and alternate with sitting during an 8 hour day.  He can walk 30 minutes at a time and alternate with sitting during an 8 hour work day." 473.  The majority of an 8 hour workday is 4 hours and a minute.  When faced with limitations of 4 hours per day and knowing that it is important to the issue of disability, one would have expected Hartford, as it did with Dr. Epstein, to ask Dr. Mummaneni to give a clearer answer to the question of how long can the plaintiff sit in an 8 hour day.    Under the circumstances, Mummaneni's silence is not evidence that contradicts the 4 hour sitting limitation.

Dr. Krauskop never examined the plaintiff.  He did a record review.  He saw the sitting limitations of Drs. Epstein, Splies, and Deutsch.    He saw Dr. Mummaneni's comment quoted above.   He wrote that he discussed with Dr. Deutsch the 4 hour sitting limitation.  Dr. Deutsch told him, "Mr. Eigner could sit and stand/walk each four hours per day with allowance to change posture between sitting and standing." 200.   Krauskop did not disagree with Deutsch's sitting opinion.   Yet, when they discussed limitations on grasping, pushing and fine manipulation, Dr. Krauskop did not hesitate to voice his disagreement.  Similarly, Dr. Krauskop had no problem disagreeing with Dr. Splies on other issues.  201. Hartford never asked Dr. Krauskop his opinion regarding Eigner's sitting limits.

Armani was, as is this case, a de novo standard of review case.  The Ninth Circuit held that as a matter of law, a person with a sitting limitation of 4 hours cannot work at a sedentary job.  Defendant's attempts to escape the holding of Armani are meaningless even if they had factual merit.

### III.  MANY OF DEFENDANT'S ARGUMENTS LACK FACTUAL SUPPORT.

#### A.  Dr. Krauskop Is Wrong About the Pain Medications Taken by Mr. Eigner.

In the letter denying the administrative appeal, the defendant pointed out that Dr. Krouskop believed that Mr. Eigner did not take enough medication to justify his pain complaints.  Dr. Krouskop's report "noted that . . . Mr. Eigner has used both hydrocodone and diazepam for pain control" and that he did not receive enough of the drugs to be able to use a tablet a day.  1888.

The record shows that Mr. Eigner was not only taking the two medications discussed by Dr. Krauskop, he was also taking Oxycontin, Norco, Flexeril and Nortriptyline.   168, 271, 322, 1315.   All are pain medications.  www.drugs.com/oxycontin.html;   www.drugs.com/norco.html; www.drugs.com/comments/nortriptyline/for-pain.html; www.drugs.com/search.php?searchterm=flexeril.   Norco, Oxycontin and Hydrocodone are opiate medications.  So even if one could say that there is a number or range of numbers of pills that a person must take in order for his pain to be severe enough to justify his being disabled, Dr. Krauskop's opinion on the issue is flawed because he failed to take notice of at least 4 pain medications that Eigner was taking.

#### B.  Eigner's Claim Is Supported By Objective Evidence.

The defendant argues that plaintiff's pain is subjective and that its policy calls for "objective medical findings."  Doc. 28 14/9-26.  The policy requires for proof of disability, "Objective medical findings which support your disability. Objective medical findings include but are not limited to tests, procedures, or clinical examinations standardly accepted in the practice of medicine, for your disabling conditions."  2275.  Does the policy call for objective medical evidence of an illness/condition or objective medical evidence of pain?  The two are not the

same.  In <u>Hawkins v. First Union</u> 236 F.3d 914 (7th Cir. 2003) the court discussed a denial of disability benefits based, in part, on a lack of objective medical evidence.  The claimant's illness causing the pain was fibromyalgia, not involved here, but the court's discussion is relevant to this case nevertheless.  The court pointed out that while the disease of fibromyalgia could "be diagnosed more or less objectively by the 18-point test . . . the amount of pain and fatigue that a particular case of it produces cannot be.  It is 'subjective'."  It was arbitrary and capricious, the Court held, to deny disability benefits because the claimant's pain could not be proven objectively.  Similarly in this case, the plaintiff's medical conditions can be proven objectively.  It is only his pain resulting from the medical conditions that cannot be proven by objective evidence.  Pain is rarely subject to objective proof and to deny benefits because pain causing disability is not subject to objective proof is arbitrary and capricious -- it gives the insurance industry the potential to deny all claims.

Moreover, to the extent that the defendant's policy is ambiguous, since review in this case is de novo, the doctrine of contra proferentum applies. <u>Patterson v. Hughes</u> 11 F.3d 948 (9th Cir. 1993).  An ambiguous provision is to be interpreted in favor of the claimant.  Such an interpretation of the policy calls for objective evidence of plaintiff's physical condition causing the pain and not objective evidence of the pain itself.  Objective evidence of the conditions that can cause plaintiff's pain exists.  He has gone through numerous operations, painful tests, and clinical examinations.  Evidence of a claimant's willingness to undergo painful medical procedures and use narcotics in order to alleviate pain is probative of the severity of the pain.  <u>Raybourne v. Cigna</u> 576 F.3d 444 (7th Cir. 2009); <u>Raybourne v. Cigna</u> 700 F.3d 1076 (7th Cir. 2012); <u>Zorn v. Principal</u> 2012 WL 112949 *4(S.D. Ga. 2012).

Defendant seems to argue that there are no recent positive test results supporting plaintiff's claims.  Doc. 28 8/3-12.  The administrative record shows

6

otherwise.  In the summer of 2016 Eigner underwent an EMG/nerve conduction test that was positive for "left ulnar neuropathy and mild bilateral carpal tunnel syndrome and right C5 radiculopathy[2]."  169.

### C.  Mr. Eigner's Social Security Award Supports His Claim.

Next, defendant points to the social security award to Mr. Eigner.  It says that "medical improvement is expected with appropriate treatment.  Consequently, a continuing disability review is recommended in 36 months."  Doc 28 9/6-8.  Although some may question the medical predictions of a social security official, Hartford apparently does not.  It has been more than 36 months since Mr. Eigner was awarded disability benefits from social security and he is still receiving them.  It appears that Hartford is only interested in a social security decision that favors a termination of benefits.

### D.  Dr. Krouskop Forgot to Ask the Right Questions.

Dr. Krouskop wrote that "Mr. Eigner's treating physicians have not pursued any new medication trials or initiated treatment with a long-acting narcotic, which would be expected if Mr. Eigner's pain complaints were out of control."  209.  First, neither the Hartford policy nor the law require that Mr. Eigner's pain be "out of control" for him to be disabled.  What does "out of control" pain even mean?

Next, one wonders if Dr. Krouskop would maintain his opinion if it was pointed out to him that along with the two pain medications that he was aware of, Mr. Eigner was prescribed 4 more, two of which, Norco and Oxycontin, are narcotics.

Finally, review in this case is generally limited to the administrative record. Opeta v. Northwest Airlines 484 F.3d 1211 (9th Cir. 2007).  Even if Dr. Krauskop's facts were correct, he spoke to both Dr. Slies and Dr. Deutsch.  Why

---

[2] Defendant writes, "Dr. Krauskop, who had the benefit of all of Plaintiff's submitted and collected records, noted that electrodiagnostic studies from June 2016 found no evidence to support the presence of an ongoing cervical radiculopathy." Doc 28 10/8-10.  It seems he was, once again, wrong on the facts.

didn't he ask them, when he had the opportunity, why they didn't "pursued any new medication trials or initiated treatment with a long-acting narcotic?"  There could be a hundred reasons including, "We did."

### E.  There Is No Evidence of Improvement In
### Plaintiff's Condition.

Defendant writes that the burden of proof is on Mr. Eigner to prove that he is disabled.  Part of the evidence of disability is the fact that Eigner was found to be disabled by the defendant and that there is no evidence of any improvement in his condition.

In McOsker v. Paul Revere 279 F.3d 586, 589 (8th Cir. 2002) the court wrote, "We are not suggesting that paying benefits operates as an estoppel so that an insurer can never change its mind; but unless information available to an insurer alters in some significant way, the previous payment of benefits is a circumstance that must weigh against the propriety of an insurer's decision to discontinue those benefits."  See also Gunderson v. W.R. Grace & Co. 874 F.2d 496 (8th Cir. 1989); Connors v. Connecticut General Life Insurance Co. 272 F.3d 127 (2d Cir. 2001)["Had the District Court recognized that CGLIC's findings of ineligibility was not in response to an application for benefits, but rather a reversal of policy preceded by no significant change in Connors's [sic] physical condition, it may have accorded less weight to the evidence presented by CGLIC."]; Saffon v. Wells Fargo 522 F.3d 863, 811 (9th Cir. 2008)["MetLife had been paying Saffon long-term disability benefits for a year, which suggests that she was already disabled."].

**CONCLUSION**

A preponderance of the evidence shows that Mr. Eigner cannot sit for longer than 4 hours in an 8 hour workday.  As a matter of law, he is unable to perform even a sedentary job.  The decision to terminate his disability benefits was legally wrong.  Defendant's Motion for Summary Judgment should be denied.


DATED:   October 2, 2017


/s/*Charles J. Fleishman*

CHARLES J. FLEISHMAN

Attorney for plaintiff