LINDA B. OLIVER (SBN 166720)
loliver@maynardcooper.com
MAYNARD, COOPER & GALE, LLP
600 Montgomery Street, Suite 2600
San Francisco, CA 94111
Telephone: (415) 704-7433
Facsimile: (205) 254-1999

Attorneys for Defendant
HARTFORD LIFE AND ACCIDENT INSURANCE
COMPANY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID EIGNER,<br><br>                     Plaintiff,<br><br>       v.<br><br>HARTFORD LIFE AND ACCIDENT<br>INSURANCE COMPANY,.<br><br>                     Defendant. | ) Case No. 17-CV-00211-VAP-JEM<br>)<br>) **DEFENDANT HARTFORD LIFE**<br>) **AND ACCIDENT INSURANCE**<br>) **COMPANY'S REPLY IN**<br>) **SUPPORT OF ITS MOTION**<br>) **FOR SUMMARY JUDGMENT**<br>)<br>)  Date:  November 13, 2017<br>) Time:  2:00 p.m.<br>) Courtroom: 8A |

# TABLE OF CONTENTS

I.      INTRODUCTION…………..........................................................1

II.     LEGAL ARGUMENT………...................................................1

    A.   Hartford Correctly Determined that, as of February 2016, Plaintiff was Not Disabled from Performing Any Occupation. ...........................................1

        1.  *Armani* Does Not Preclude Judgment in Hartford's Favor ...........1

        2.  Plaintiff Does not Address, Much Less Distinguish, *Shaw*............3

    B.   Plaintiff's "Clinical Examinations" Leading up to February 2016 Demonstrate Sedentary Capacity...........................................................5

    C.   The Burden Rests and Remains Squarely on Plaintiff.......................8

III.    CONCLUSION…………......................................................12

1
2

# TABLE OF AUTHORITIES

**Cases**

3
4

*Armani v. Northwestern Mut. Life Ins. Co.*,
   840 F.3d 1159 (C.D. Cal. 2016) ................................................. 1, 2, 3

5
6

*Biggar v. Prudential Ins. Co. of Am.*,
   __ F.3d ___. 2017 WL 3453341 (N.D. Cal. Aug. 11, 2017) ........................... 7, 9

7
8

*Black & Decker v. Nord*,
   538 U.S. 822, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003) .............................. 2, 5

9
10

*Broyles v. A.U.L. Corp. Long-Term Disability Ins. Plan*,
   No. C-07-5305 MMC, 2009 U.S. Dist. LEXIS 110744, 2009 WL 3817935
   (N.D. Cal. 2009) ................................................................. 4

11
12

*Cossio v. Life Ins. Co. of N. Am.*,
   240 F.Supp.2d 388 (D. Md. 2002) ..................................................... 10

13
14

*Farley v. Benefit Trust Life Ins. Co.*,
   979 F.2d 653 (8th Cir. 1992) ......................................................... 10

15
16

*Horton v. Reliance Standard Life Ins. Co.*,
   141 F.3d 1038 (11th Cir.1998) ....................................................... 10

17
18

*Leipzig v. AIG Life Ins. Co.*,
   362 F.3d 406 (7th Cir. 2004) .......................................................... 4

19

*Levinson v. Reliance Standard Life Ins. Co.*,
   245 F.3d 1321 (11th Cir. 2001) ....................................................... 9

20
21

*Miller v. Metropolitan Life Ins. Co.*,
   925 F.2d 979 (6th Cir. 1991) ......................................................... 10

22
23
24

*Muniz v. AMEC Constr. Mgmt.*,
   No. CV-07-8066 CAS (AJWx), 2009 U.S. Dist. LEXIS 26970, 2009 WL
   866843 (C.D. Cal. Mar. 30, 2009) .................................................... 10

25
26

*Porco v. Prudential Ins. Co. of Am.*,
   682 F. Supp. 2d 1057 (C.D. Cal. Jan, 19, 2010) ...................................... 10

27

*Sanchez-Levine v. Metro. Life Ins. Co.*,
   2017 WL 4286139 (C.D. Cal. Sept. 26, 2017) ...................................... 4, 9

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Seleine v. Fluor Corp. Long-Term Disability Plan*,
   598 F.Supp. 2d 1090 (C.D. Cal. 2009) ................................................................ 2

*Shaw v. Life Ins. Co. of N. Am.*,
   144 F. Supp. 3d 1114 (C.D. Cal. 2015) ...................................................... 2, 3, 4

*Silver v. Exec. Car Leasing Long-Term Disability Plan*,
   466 F.3d 727 (9th Cir. 2006) .............................................................................. 2

**Statutes**

ERISA, 29 U.S.C. § 1132(a)(1)(B) .......................................................... 10

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Plaintiff's Opposition continues to oversimplify a complex and lengthy Record.   The Record contains a multitude of medical opinions and other assessment tools such as surveillance and employability analyses.   Rather than confront the conflicting medical opinions and clear evidence of functionality exceeding self-reported limitations, Plaintiff continues to trumpet one case over and over again.   This case law, however, is not a one-size-fits-all holding, and does not apply here given the facts of this case.   In the instant case and over three years into the "any occupation" phase of disability, Hartford weighed the opinions of Plaintiff's treating physicians (including those that waffled over time) and the opinions of reviewing physicians specializing in the very conditions for which Plaintiff sought disability and also took into account Plaintiff's surveillance video and other evidence demonstrating functionality above and beyond that self-reported by Plaintiff, and then rendered a correct claims decision.   As such, this Court should deny Plaintiff's motion for summary judgment and grant Hartford's motion.

## II.     LEGAL ARGUMENT

### A.     Hartford Correctly Determined that, as of February 2016, Plaintiff was Not Disabled from Performing Any Occupation.

#### 1.     *Armani* Does Not Preclude Judgment in Hartford's Favor

Plaintiff's argument both supporting his own motion and in opposing Hartford's motion hinges entirely on one holding – suggesting that if a claimant cannot sit more than four hours in a day then he cannot perform sedentary work. *See Armani v. Northwestern Mut. Life Ins. Co*., 840 F.3d 1159 (C.D. Cal. 2016). In reaching *Armani*'s holding, the Ninth Circuit panel noted that every physician who treated Armani determined that he could not sit for more than four hours a

1

1  day.  840 F.3d at 1163.  That is clearly not the case for Plaintiff here. *See* II. B.
2  below.

3      Moreover, *Armani* does not stand for the proposition that – flying in the
4  face of all other evidence in the Record – a court should be required to overturn an
5  ERISA administrator's decision solely because of a treating physician's sitting
6  restriction.  To accept such an understanding of *Armani* would implicitly overrule
7  long-standing case law, including *Seleine v. Fluor Corp. Long-Term Disability*
8  *Plan*, 598 F.Supp. 2d 1090; 1101-02 (C.D. Cal. 2009), which held that an ERISA
9  administrator is not required to accept treating physician and claimant's opinions at
10 face value.  *See id.* ("The Court finds that the opinions of Seleine and her treating
11 doctors are **insufficient by themselves** to establish disability under the Plan
12 requirements and case law.") (emphasis added);  *see also  Black & Decker v. Nord*,
13 538 U.S. 822, 834, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003) ("[C]ourts have no
14 warrant to require administrators automatically to accord special weight to the
15 opinions of a claimant's physician; nor may courts impose on plan administrators a
16 discrete burden of explanation when they credit reliable evidence that conflicts
17 with a treating physician's evaluation.").  A treating physician's opinion on
18 sedentary capacity cannot be both the beginning and the end of the analysis,
19 particularly when there is contradictory evidence in the Record as is present here.

20      The *de novo* standard of review that applies here mandates an
21 "independent" and "thorough" inspection of Hartford's decision.  *See Silver v.*
22 *Exec. Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 733 (9th Cir. 2006)
23 ("[D]istrict courts have a responsibility under the ERISA framework to undertake
24 an **independent** and **thorough** inspection of an administrator's decision.")
25 (emphasis added); *see also Shaw v. Life Ins. Co. of N. Am.*, 144 F. Supp. 3d 1114,
26 1122-23 (C.D. Cal. 2015)("When conducting *de novo* review of a decision by an
27 ERISA plan administrator, the Court has a responsibility to undertake an
28

1   independent and thorough inspection of the decision"). To accept Plaintiff's

2   argument that this Court should truncate its analysis by accepting a treating

3   physician's opinion without independently and thoroughly examining the entire

4   Record including specialists' opinions and the video surveillance would be a

5   shortcut not permitted under the current ERISA framework of *de novo* review.

6   Here, such a review not only reveals that those opinions are overstated in

7   Plaintiff's favor, it is also demonstrates that as of February 2016, Plaintiff had the

8   ability to perform a range of alternative occupations that allowed for reasonable

9   restrictions and limitations.

10   **2.   Plaintiff Does not Address, Much Less Distinguish, *Shaw*.**

11   Plaintiff's Opposition is notable for what it does not include – any

12   discussion of *Shaw v. Life Insurance Company of North America,* 144 F. Supp. 3d

13   1114 (C.D. Cal. 2015). As argued in Hartford's initial brief, this Court has found

14   the following factors, as presented in this case, relevant in resolving conflicting

15   medical opinions: (1) Plaintiff's records here largely reflect subjective complaints

16   over objective medical findings; (2) Plaintiff's long history of treatment with his

17   chiropractor and internist may suggest biased disability opinions in Plaintiff's

18   favor; (3) the medical doctors engaged by Hartford to perform an IME and review

19   Plaintiff's claim (an occupational medicine specialist and physical medicine and

20   rehabilitation specialist, respectively) specialize in the treatment of Plaintiff's

21   conditions as opposed to Plaintiff's chiropractor and internist; and (4) Hartford's

22   reviewing physicians' opinions are equally, if not more, detailed than Plaintiff's

23   treating physicians opinions. *Id.* at 1129. On balance, the *Shaw* factors

24   indisputably highlight the thorough and well-supported opinions of the specialists

25   who either reviewed Plaintiff's records or performed an IME.

26   Again, if Plaintiff's proffered interpretation of *Armani* is followed, all of

27   these factors will be cast aside as unnecessary analysis – an unsupported and

28

3

untenable result.  The fact remains that courts within this Circuit have *continued* to apply *Shaw* in cases where there are conflicting medical opinions – including after the issuance of *Armani*.  For instance, in *Sanchez-Levine v. Metro. Life Ins. Co.*, 2017 WL 4286139, *10 (C.D. Cal. Sept. 26, 2017), which only issued last month, this Court applied *Shaw* in affirming a claims administrator's benefits decision that credited reviewing physicians' opinions over a treating physicians' opinions:

> Nor does ERISA require plan administrators to accord special deference to the opinions of treating physicians. *See Black & Decker v. Nord*, 538 U.S. 822, 834, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003) ("[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."). In fact, "[t]reating physicians are more or less required to accept their patients' representations," yet neither an ERISA claim administrator nor the reviewing court is obligated to do so. *Seleine*, 598 F. Supp. 2d at 1102; *see also Shaw,* 144 F. Supp. 3d at 1128 ("Most of the time, physicians accept at face value what patients tell them about their symptoms; but insurers . . . must consider the possibility that applicants are exaggerating in an effort to win benefits (or are sincere hypochondriacs not at serious medical risk)." (quoting *Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 409 (7th Cir. 2004)). …
>
> MetLife properly relied on Dr. Sugarman's and Dr. Gordan's reviews to support the conclusion that Sanchez-Levine was not disabled within the meaning of the Plan because those reports are thorough and well supported. *See, e.g., Shaw,* 144 F. Supp. 3d at 1130 ("[A] paper review by a physician retained by the plan administrator may be more reliable than the opinion of a treating physician."); *Broyles v. A.U.L. Corp. Long-Term Disability Ins. Plan*, No. C-07-5305 MMC, 2009 U.S. Dist. LEXIS 110744, 2009 WL 3817935 (N.D. Cal. 2009) ("[C]onsulting physicians'

opinions based on reviews of medical records are an acceptable basis of an administrator's determination.").

As demonstrated in *Shaw* and as recognized by even the United States Supreme Court in *Nord*, when reviewing physicians' opinions are more credible than treating providers' opinions, it is proper, and even at times more appropriate, to rely on such opinions for a claims decision such as the one presented here.

## B.   Plaintiff's "Clinical Examinations" Leading up to February 2016 Demonstrate Sedentary Capacity.

Plaintiff devotes a significant portion of his submissions to the Court emphasizing out of date medical opinions and records.  For instance, while Hartford did obtain an Independent Medical Examination (IME) of Plaintiff in February 2013, this IME is of little value in examining Plaintiff's condition as of February 2016, three full years later.  Indeed the surveillance video of Plaintiff showing fourteen hours of activity in one day (to which Plaintiff responds by conceding that he sat most of the day), did not occur until July 2015, over two years <u>after</u> this IME.  Plaintiff then cites to an even earlier (April 2012) opinion from his internist. *See* [Doc. 36] at p. 3.

More recent records from Plaintiff's own doctors tell a different story. Plaintiff focuses on only two treating providers – his chiropractor (Dr. Splies) and his internist (Dr. Deutsch) – not chiropractors, neurologists or physiatrists. Records of medical office visits leading up to Hartford's February 2016 termination reveal an August 2015 visit with Dr. Deutsch where Plaintiff described his pain as "mild to moderate" and "fluctuating" with an onset date of two months ago.  The "location" was identified only as "right elbow" due to a recent injury from "right arm aggravated by police pulling arm behind him during arrest" in June 2015.  (AR 1294).  In October 2015, Plaintiff saw his chiropractor when he

1  was experiencing a "flare-up" in pain due to a recent slip and fall incident, and he
2  was referred to an orthopedist.  (AR 1272-1275).

3  With respect to objective testing, the latest clinical test results of the spine
4  are included in a neurologist's report submitted on appeal. They include (1) a June
5  6, 2016 MRI scan of the cervical spine showing "a stable fusion, no foraminal
6  compromise and C4 myelomalacia, stable since 2007; and (2) a June 6, 2016 CAT
7  scan of the cervical spine showing discogenic change without canal stenosis." (AR
8  AR 169). The neurologist did not provide his own restrictions and limitations on
9  Plaintiff's functionality. (AR 78).   These clinical findings fail to provide a
10  foundation for the overreaching restrictions and limitations provided by the
11  internist and chiropractor.[1]

12  Plaintiff's internist and chiropractor opinions must then be contrasted to
13  occupational medicine and physiatrist specialists' opinions – which unequivocally
14  recommend reasonable restrictions and limitations that allow for sedentary
15  capacity.  First, Dr. Mummaneni personally examined Plaintiff on January 20,
16  2016 and spent a total of nine hours including face-to-face time with Plaintiff and
17  review of medical records and the surveillance video.  In contrast to Plaintiff's
18  depictions, Dr. Mummaneni's report is twenty-four (24) pages and thoroughly
19  examines Plaintiff's prior medical records and testing.  Plaintiff described his pain
20  to Dr. Mummaneni as increasing with prolonged standing and with "prolonged
21  sitting up without being able to lean back such as a barstool." (AR 1198).  Dr.
22  Mummaneni did not ignore reasonable restrictions and limitations for Plaintiff in
23  rendering his opinion.  In fact, he maintained the lifting restriction of no more than
24  10 lbs. frequently and 20 lbs. only occasionally and noted that "overhead work
25  would be difficult for him." (AR 1213-14).  With respect to sitting, however, his

26

27  [1] In fact, the reviewing physical medicine specialist (Dr. Krouskop) noted that these most recent
   test results did not even report findings consistent with the chiropractor's prior assertions that
28  Plaintiff had been diagnosed with Diffuse Idiopathic Skeletal Hyperostosis (DISH). (AR 77).

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

1    opinion is clear.  Plaintiff can alternate between standing, walking and sitting

2    during an 8 hour work day with walking and standing limited to 30 minutes at a

3    time.  (AR 1213).  Allowing for periodic changes in position, Plaintiff can work "8

4    hours a day, up to 40 hours a week."  *Id.*

5          Dr. Krouskop, the board certified physical medical and rehabilitation

6    specialist, then reviewed Plaintiff's records and issued a report on September 26,

7    2016.  (AR 198).  He noted that clinical tests revealed that Plaintiff's post-surgical

8    "cervical fusion has been solid."   He also noted Plaintiff shoulder pain and

9    complications – which led Dr. Krouskop to recommend (in agreement with Dr.

10   Mummaneni and Plaintiff's treating doctors) restrictions on overhead work and

11   lifting.  (AR 201) (noting "agreement" with Dr. Deutsch that "overhead lifting

12   should not be done").  Dr. Krouskop further addressed with Dr. Splies that, despite

13   the chiropractor's assertions to the contrary, Plaintiff's June 2016 electrodiagnostic

14   studies showed "no evidence to support the presence of an ongoing cervical

15   radiculopathy."  *See, e.g. Biggar v. Prudential Ins. Co. of Am.*, __ F.3d ___. 2017

16   WL 3453341, at *11 (N.D. Cal. Aug. 11, 2017) (assigning less weight to treating

17   physician's opinion where her conclusions about the severity of symptoms were

18   not supported by her own contemporaneous physical findings and objective

19   evidence).   With no clinical testing to support more aggressive or total sitting

20   limitations, Dr. Krouskop's only limitations were no lifting above 20 lbs., no

21   working above shoulder level and allowances for changing posture between sitting

22   and standing during the work day.  (AR 207).[2]   With these restrictions in mind –

23   and with no specific additional restriction as to how long Plaintiff could sit total

24   during the day – this specialist opined that Plaintiff "would be capable of

25

26

27   [2] Dr. Krouskop's specific restrictions clearly incorporate a finding as to Plaintiff's ability to sit
     during the work day (with the stated ability to change positions) – in contrast to Plaintiff's
28   depiction of Dr. Krouskop's report as "silent" on sitting capabilities.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

performing work duties for eight hours per day, 40 hours per week on a sustained basis." (AR 209).

It is axiomatic that being able to change positions periodically during the work day, even once or twice per hour, does not preclude sedentary capacity. Not only does Dr. Krouskop's medical opinion support this common-sense conclusion, the employability analyses conducted by Hartford yielded several sample occupations that specifically allowed for shifting from sitting to standing once or twice per hour. (AR 33-34). Then, the surveillance video captured by Hartford actually reflects Plaintiff's sitting capacity in addition to Plaintiff's own admissions about sitting for flights to international destinations. Plaintiff's attempts to shoehorn the facts of this case into the limited and fact-specific *Armani* holding on sitting restrictions simply do not fit here. A sitting limitation "litmus test" has no place in ERISA jurisprudence as it would obviate Hartford's full and fair review and reasoned conclusion.

Thus, Hartford made the correct decision based on the evidence before it as of February 2016 when it terminated the claim, and again on October 19, 2016, when it upheld that decision on appeal, that Plaintiff was no longer precluded from performing occupations that allowed for reasonable restrictions and limitations to accommodate his condition. Based on these medical opinions, the Policy language requiring Plaintiff produce "objective medical evidence" as part of his ongoing obligation to provide "continuing proof of disability" as well as the other Record evidence present here demonstrate beyond a doubt that Hartford's decision was correct.

### C.   The Burden Rests and Remains Squarely on Plaintiff.

Finally, in his opposition, Plaintiff argues that a previous award of benefits results in a shifting burden of proof. This is plainly wrong both under the terms of the Plan and case law. The Policy here requires Plaintiff to submit sufficient "Proof of Disability." (AR 2275). This requirement is the same regardless of how

8

long benefits have been paid.  In fact, the Policy also includes a "Continuing Proof of Disability" section: "You may be asked to submit proof that You continue to be Disabled…Requests of this nature will only be as often as reasonably necessary.  If so, this will be at Your expense and must be received within 30 day of Our request or as soon as reasonably possible."  *Id.*

The Central District of California recently reiterated that the burden of proof remains squarely on an ERISA claimant - holding that the burden is on the plaintiff "to prov[e] [his] entitlement to benefits under the Plan by a preponderance of evidence."  *Sanchez-Levine v. Metro. Life Ins. Co.*, 2017 WL 4286139, at *9.  In fact, this court has also considered Plaintiff's very argument regarding shifting burden of proof when an insurer terminates a claim for ongoing benefits (as opposed to denying an initial claim) and has soundly rejected it:

> The parties dispute which of them has the burden of proof in this case. Porco argues that "because LTD benefits were paid until December 31, 2005, with no evidence that [his] condition changed for the better," defendants bear the burden of showing that he was no longer disabled at the time Prudential terminated his benefits. Porco cites *Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1331 (11th Cir. 2001), in support of this position. In *Levinson,* the court concluded that because plaintiff submitted evidence that he was totally disabled, thus "satisf[ying] his obligations under the terms of the plan," the defendant "had to produce evidence showing that Levinson was no longer disabled in order to terminate his benefits." *Id.*  Although the *Levinson* court noted that the plan administrator objected to this shifting of the burden of proof, it did not address the objection and merely noted that the plan participant had submitted some evidence that he was totally disabled under the terms of the plan. *Id.* The *Levinson* court shifted the burden to the defendant after concluding that plaintiff had "satisfied his obligations under the terms of the plan." *Id.* Here, the terms of the Plan obligated Porco to submit satisfactory proof of continuing disability at Prudential's request.  Whether Porco satisfied this obligation to

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

substantiate his continuing disability adequately is the ultimate issue the court must decide.

Because the terms of the Plan place the burden of proving continuing disability on the participant, as even the *Levinson* court acknowledged, and because Porco's satisfaction of that obligation is the issue the court must decide in this action, the court finds that Porco has the burden of proof. See *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 985 (6th Cir. 1991) ("Plaintiff implies that once disability benefits are conferred, the burden of proof lies with the insurance company to prove that the employee can return to her former regular employment. However, under the terms of the Plan, it is the employee who must continue to supply on demand proof of continuing disability to the satisfaction of the insurance company"); *Cossio v. Life Ins. Co. of N. Am.,* 240 F.Supp.2d 388, 392 n. 2 (D. Md. 2002) ("Courts have held that policy language requiring an insured to submit 'proof of continued disability' shifts the burden of proof to the insured"); *see also Muniz v. AMEC Constr. Mgmt.,* No. CV-07-8066 CAS (AJWx), 2009 U.S. Dist. LEXIS 26970, 2009 WL 866843, *5 (C.D. Cal. Mar. 30, 2009) ("The parties dispute which party bears the burden of proof in this case. Generally, a plaintiff suing for benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), must establish his entitlement to benefits. See *Farley v. Benefit Trust Life Ins. Co.,* 979 F.2d 653, 658 (8th Cir. 1992); see also *Horton v. Reliance Standard Life Ins. Co.,* 141 F.3d 1038 (11th Cir.1998) (citing *Farley*). Muniz attempts to argue that, as here, where an insurer seeks to terminate disability benefits as opposed to refusing to award them in the first place, the burden of proof shifts to the defendant. This is unsupported by case law, as numerous courts, including several within this circuit, have consistently held that the burden of proof remains with the plaintiff in just such a case" (collecting cases)).

*Porco v. Prudential Ins. Co. of Am.*, 682 F. Supp. 2d 1057, 1072 (C.D. Cal. Jan, 19, 2010).   Accordingly, the law is abundantly clear that Hartford's previous award of benefits does not shift the burden to Hartford, and the burden remains on Plaintiff to prove entitlement to benefits.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Plaintiff cannot escape this burden by morphing his condition into something it is not. Plaintiff's primary conditions for which he sought ongoing disability are shoulder, neck and back pain resulting from cervical disc disease and a 2007 fusion – not fibromyalgia or chronic fatigue or some other condition that is difficult to verify via objective testing.  (AR 1881).  These cervical and lumbar issues lend themselves to testing.  Indeed, various x-rays, CAT scans, MRIs, nerve tests and other test results are included in the Record, presumably because his doctors believed them helpful to his overall treatment plan and assessing improvement or deterioration.[3]  In the end, however, these test results did not support a total inability to work.

Even so, Plaintiff argues that his pain complaints were not adequately addressed by Hartford.  This assertion is flatly refuted by the Record which shows consideration and accommodation of pain on multiple levels.   For instance, Hartford's reviewer notes Plaintiff's complaints of pain following his rotator cuff repairs and subacromial decompression.  (AR 199).  Dr. Krouskop's opinions then specifically address those complaints and incorporate them into his recommended restrictions: "Mr. Eigner's multilevel cervical fusion and pain complaints would support a 20-pound lifting restriction … Mr. Eigner should also be allowed to change posture from sitting to standing once or twice per hour."  (AR 209).  Also, in contrast with Plaintiff's assertions, Hartford did, in fact, review the most recent records provided regarding Plaintiff's pain prescriptions as of August 25, 2016 (*see* AR 77) and still determined that neither the pain nor medications taken for that pain precluded sedentary work capacity.[4] Plaintiff cannot meet his burden of proof

---

[3] Even the Social Security Administration acknowledged that Plaintiff's conditions were conditions that could show improvement over time.  (AR 440) ("Medical improvement is expected with appropriate treatment.")

[4] The full recitation of this notation dispels Plaintiff's assertions: "Mr. Eigner saw Dr. Sheehy on 8/25/16 for complaints of neck and occipital pain and upper extremity paresthesias.  Mr. Eigner reported using hydrocodone, diazepam, Flexeril, nortriptyline, amlodipine, metoprolol and Valsartan.  No adverse medical side effects were described."  (AR 77).

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

of showing ongoing disability as of February 2016 by misconstruing the Record and attempting to characterize his claim as something it patently is not.  Hartford's decision is due to be upheld.

### III.   CONCLUSION

Hartford's claims decision was correct under the plain language of the Plan and applicable law given a thorough review of the Record; therefore, Hartford is entitled to judgment in its favor, and Plaintiff's Complaint should be dismissed.

DATED:  October 9, 2017                MAYNARD, COOPER & GALE, LLP


By:_____
Linda B. Oliver
Attorneys for Defendant
HARTFORD LIFE AND
ACCIDENT INSURANCE
COMPANY

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# PROOF OF SERVICE

STATE OF CALIFORNIA            )
COUNTY OF SAN FRANCISCO        )

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is 600 Montgomery Street, Suite 2600, San Francisco, California 94111.

On the date indicated below, I served the foregoing document described as:

**DEFENDANT HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

✓ By CM/ECF ELECTRONIC SERVICE: The following recipients are registered as CM/ECF Users with the Court, and have consented to service through the Court's automatic transmission of a notice of electronic filing:

> Charles J. Fleishman
> The Fleishman Law Firm
> 21243 Ventura Blvd., Ste. 141
> Woodland Hills, CA 91364

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed October 9, 2017 at San Francisco, California.

_____
Rachel Ouk